**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
STREAMING EDGE, INC.,

        Plaintiff,

    -against-         **COMPLAINT**

                 22-CV-_____

JOHN BOJTOS,

        Defendant.
------------------------------------------------------------------X

  Plaintiff, by its attorney, Todd Wengrovsky, respectfully sets forth and alleges:


**I.**
**JURISDICTION**

  1. This is an action for breach of contract.  This Court has personal jurisdiction over Defendant in that Defendant transacts business in the State of New York and this District, and Defendant has committed tortious acts within the State, and/or without the State causing injury within the State. The amount in controversy exceeds $75,000.


**II.**
**VENUE**

  2. Venue is vested in this Court pursuant to 28 USCS 1391 and 1400 in that the claims asserted here arose within this district, and that Plaintiff's principal place of business is located within this district.

## III.
## THE PARTIES

3.  At all relevant times, Plaintiff Streaming Edge, Inc. ("Streaming Edge") is and was a corporation company organized and existing under the laws of the State of New York. Plaintiff's main corporate address is 32 Old Slip, 34th Floor, New York, New York 10005.

4.  Upon information and belief, Defendant John Bojtos ("Bojtos") is a citizen currently domiciled in the State of Colorado with a residential address of 7630 S. Jasmine Way, Centennial, Colorado 80112.

## IV.
## BACKGROUND AND FACTS

5.  Plaintiff Streaming Edge is a prominent software research and development house located in New York, New York.

6.  Defendant Bojtos is a software developer.

7.  Streaming Edge and Bojtos entered into an Employment Agreement dated December 5, 2012, a copy of which is attached hereto as **EXHIBIT A**.  The Employment Agreement called for Bojtos to work for Streaming Edge as a Senior Software Developer based in New York, for a substantial annual base salary, as well as bonuses, benefits, paid vacation time, and reimbursement of various expenses.

8.  Section 20 of the Employment Agreement, with the heading "Governing Law/Jurisdiction," provides that "This agreement shall governed by and construed and interpreted in accordance with the laws of the State of New York without references to principles of conflict of laws."

9.  In light of the technical and proprietary nature of Streaming Edge's work, one critical portion of the Employment Agreement is Section 13, with the subject header "Prohibited Activity." Section 13 provides, in pertinent part, as follows:

2

"A) During the Term of Employment, the Employee is prohibited to be employed by any other corporation, business entity and/or corporation that is directly or indirectly in competition with the Company or any of its affiliates prior to the written consent of the Company.

A.1) The Employee also covenants and agrees that (i) during the Term of Employment and (ii) during the period ending on the 2nd anniversary after the date of the termination of his/her employment, he shall not at any time, without the prior written consent of the Company, directly or indirectly, whether from his/her account or as a shareholder (other than as permitted by Section 12(c) below), partner, joint venturer, employee, consultant, lender, advisor, and/or agent of any person, firm, corporation, or other entity, solicit, recruit, or seek employment by the affiliate of the Company or hire any employees of the Company or any of its affiliates or persons who have worked for the Company or any of such affiliates, or solicit or encourage any employee of the Company or any of its affiliates to leave the employment of the Company or any of such affiliates, as applicable…

C.) If his/er employment hereunder is terminated by the Company or by the Employee, he/she shall not at any time, without the prior written consent of the Company, directly or indirectly, whether from his/her account or as a shareholder (other than as permitted by Section 13 (b and d) below), partner, joint venturer, employee, consultant, lender, advisor, and/or agent of any person, firm, corporation of the company or any entity affiliated with the company (in each case for the purposes of this Section 13, the term "company" shall be deemed to include any successor entity to the Company) ("Competitive Activities") including (i) soliciting any customer or prospective customer of the Company or any of its affiliates to purchase any good or services of the type provided by the Company, or any of such affiliates, as applicable, and (ii) Employee shall not at any time, without the prior written consent of the Company, directly or indirectly, solicit, license, provide goods or services, hire, consult, seek employment or engage in any business that competes, does business with, contracts with or partner, joint venture with employees or any entity affiliated with the Company. This extends to all affiliates, parent, affiliates of parent and employees of parents and affiliates, and (iii) assisting any person or entity in any way to do, or attempt to do, anything prohibited by clauses (i) or (ii) above."

10.   Following several years of employment, during 2020, Bojtos expressed an interest in leaving his employment with Streaming Edge, which led to a series of discussions and negotiations. During same, Streaming Edge offered Bojtos a substantial enhancement to his annual base salary, but Bojtos declined to accept such offer.

11. Streaming Edge then became skeptical of Bojtos' conduct, and asked Bojtos if he was attempting to work with any affiliate or subsidiary of Streaming Edge.  Bojtos expressly stated that he was not.  During such conversation, Streaming Edge reminded Bojtos of the contents of Section 13 of the Employment Agreement and that such employment would be strictly forbidden.

12. Streaming Edge then learned in March, 2021 that Bojtos had begun working for Tradition Asia, which is an affiliate of Streaming Edge.  Both Streaming Edge and Tradition Asia are affiliates owned by the same parent company, Compagnie Financiere Tradition, based in Switzerland.  Bojtos knew at such time that Tradition Asia was an affiliate.  Tradition Asia is not only an affiliate of Streaming Edge but also a customer of Streaming Edge and in use of Streaming Edge software, which was also known by Bojtos. Bojtos was a key developer used by Streaming Edge to develop the system in use by Tradition Asia. Streaming Edge had sent Bojtos on multiple trips to Asia to work with this Streaming Edge customer. Bojtos was now attempting to cut Streaming Edge out and work for Tradition Asia directly. Bojtos was free to seek employment with any other company *besides* Streaming Edge affiliates and customers.

13. Bojtos began working for Tradition Asia in substantially the same capacity as his employment with Streaming Edge, and, upon information and belief, Bojtos was sharing sensitive information with Tradition Asia.  All of the above was without the consent of Streaming Edge, in clear violation of Section 13 of the Employment Agreement, causing substantial damage to Streaming Edge.

14. In light of same, on March 9, 2021, Streaming Edge's counsel served Bojtos with a cease and desist letter which articulated the breach of contract claim, a copy of which is attached hereto as **EXHIBIT B**.  The letter outlined Bojtos' breach of Section 13 of the Employee Agreement and

demanded written confirmation of Bojtos' compliance with the terms thereof within five business days.  No such confirmation was received.

15. Bojtos not only continued the unauthorized employment with Tradition Asia, he actually then confirmed same in writing.  Specifically, in an e-mail message dated February 23, 2022, Bojtos admitted his breach of the Employment Agreement.  In a message that he sent to Bryan Angley of Tradition, copy attached hereto as **EXHIBIT C**, Bojtos stated the following: "*I'm not sure if you know but I took up a dev manager position at Tradition Asia a couple years back so I'm no longer working at StreamingEdge*."  Streaming Edge also has multiple witnesses to attest to the fact that Bojtos is working for Tradition Asia.

16. It seems clear that Tradition Asia hired Bojtos because they desired to duplicate Streaming Edge's proprietary software. This led to Bojtos attempting to duplicate the very work that he performed specifically *for Streaming Edge*.

17. Therefore, there can be no question that Bojtos engaged in employment that was expressly prohibited by Section 13 of the Employment Agreement dated December 5, 2012, and there can be no question that Bojtos has breached such contract, much to Streaming Edge's detriment. Bojtos may have even been working for both companies in the same capacity at the same time.  In addition, Bojtos likely infringed the copyrights and/or other intellectual property of Streaming Edge, leading to substantial actual and/or statutory damages.

18. Upon information and belief, Bojtos is already using some of Streaming Edge source code, leading to compromise of the code since Bojtos was the main developer of the system in question. Bojtos is disclosing trade secrets to Tradition Asia.

19. As such, Bojtos is also acting in knowing violation of the confidentiality provisions of the Employment Agreement.

20. Tradition Asia has now begun canceling contracts for Streaming Edge, and, upon information and belief, Tradition Asia is on the verge of launching another product to compete with Streaming Edge.

21. It is imperative that Bojtos be enjoined from working for Tradition Asia in any capacity. Bojtos himself acknowledged and agreed to this in the Employment Agreement itself.  Specifically, the final paragraph of Section 13 expressly states that "the parties acknowledge that in the event of a breach or threatened breach of Section 13 (a) and sub clause a.1 and 13 (b) above, the Company shall not have an adequate remedy at law.  Accordingly, in the event of any breach or threatened breach of Section 13 (a) and sub clause a.1 and 13 (b) above, the Company shall be entitled to such equitable and injunctive relief as may be available to restrain the employee and any business, firm, partnership, individual, corporation, or entity participating in the breach or threatened breach from the violation of the provisions of Section 13 (a) and sub clause a.1 and 13 (b) above."

22. It is equally imperative that there be a clear disincentive for other Streaming Edge employees to engage in similar unauthorized employment, thus a substantial monetary award is also necessary.

## AS AND FOR A FIRST CAUSE OF ACTION

23. Streaming Edge repeats and reiterates each and every allegation of paragraphs 1 through 22 set out herein, with the same force and effect as if fully set forth therein.

24. Streaming Edge and Bojtos entered into an Employment Agreement dated December 5, 2012. The Employment Agreement called for Bojtos to work for Streaming Edge as a Senior Software Developer based in New York, for a substantial annual base salary, as well as bonuses, benefits, paid vacation time, and reimbursement of various expenses.

25. Section 13 of the Employment Agreement, with the subject header "Prohibited Activity," provides, in pertinent part, as follows:

"A) During the Term of Employment, the Employee is prohibited to be employed by any other corporation, business entity and/or corporation that is directly or indirectly in competition with the Company or any of its affiliates prior to the written consent of the Company.

A.1) The Employee also covenants and agrees that (i) during the Term of Employment and (ii) during the period ending on the 2nd anniversary after the date of the termination of his/her employment, he shall not at any time, without the prior written consent of the Company, directly or indirectly, whether from his/her account or as a shareholder (other than as permitted by Section 12(c) below), partner, joint venturer, employee, consultant, lender, advisor, and/or agent of any person, firm, corporation, or other entity, solicit, recruit, or seek employment by the affiliate of the Company or hire any employees of the Company or any of its affiliates or persons who have worked for the Company or any of such affiliates, or solicit or encourage any employee of the Company or any of its affiliates to leave the employment of the Company or any of such affiliates, as applicable…

C.) If his/er employment hereunder is terminated by the Company or by the Employee, he/she shall not at any time, without the prior written consent of the Company, directly or indirectly, whether from his/her account or as a shareholder (other than as permitted by Section 13 (b and d) below), partner, joint venturer, employee, consultant, lender, advisor, and/or agent of any person, firm, corporation of the company or any entity affiliated with the company (in each case for the purposes of this Section 13, the term "company" shall be deemed to include any successor entity to the Company) ("Competitive Activities") including (i) soliciting any customer or prospective customer of the Company or any of its affiliates to purchase any good or services of the type provided by the Company, or any of such affiliates, as applicable, and (ii) Employee shall not at any time, without the prior written consent of the Company, directly or indirectly, solicit, license, provide goods or services, hire, consult, seek employment or engage in any business that competes, does business with, contracts with or partner, joint venture with employees or any entity affiliated with the Company. This extends to all affiliates, parent, affiliates of parent and employees of parents and affiliates, and (iii) assisting any person or entity in any way to do, or attempt to do, anything prohibited by clauses (i) or (ii) above."

26. Streaming Edge performed its obligations pursuant to the Employment Agreement by providing the agreed-upon payments and benefits for Bojtos' services.

27. Bojtos, however, has begun working for Tradition Asia, which is an affiliate and customer of Streaming Edge. Bojtos knew that Tradition Asia was an affiliate at such time. Bojtos is doing so in substantially the same capacity as his employment with Streaming Edge, and, upon information and belief, Bojtos is sharing sensitive information with Tradition Asia.  All of the above is without the consent of Streaming Edge, in clear violation of Section 13 of the Employment Agreement, for Bojtos' benefit, and to Streaming Edge's detriment.

28. As such, Bojtos has breached its agreement with Streaming Edge, and breached implied covenants of good faith and fair dealing.

29. Streaming Edge's counsel put Bojtos on notice of such breach via a cease and desist demand letter dated March 9, 2021.

30. Bojtos failed to comply with the terms of the cease and desist demand, and is continuously acting in violation of the Employment Agreement.

31. As a direct and proximate result of Bojtos' actions and omissions, Streaming Edge has incurred, and will continue to incur, irreparable harm as well as substantial monetary damages in an amount to be determined at trial.

32. The longer Bojtos works for Tradition Asia, the greater the damages are to Streaming Edge.  Bojtos' continued employment for Tradition Asia will continue to devalue the assets of Streaming Edge, and must be stopped immediately.

33. Due to the market value of the intellectual property at issue, and the unique circumstances of this case, Streaming Edge believes that its damages are in excess of $10,000,000 (Ten Million Dollars).

**WHEREFORE**, Plaintiff requests that:

A. It be adjudged that Bojtos is in breach of contract;

B. Bojtos and any of his officers, directors, agents, representatives, attorneys and all persons acting and claiming to act on his behalf or under his direction or authority, and all persons acting in concert or participation with him, and each of them, be permanently enjoined from acting in a manner contrary to the terms of the Employment Agreement without Streaming Edge's express written consent;

C. That the Court award Streaming Edge damages against Bojtos in an amount adequate to compensate Streaming Edge on its first cause of action;

D. That the Court award Streaming Edge costs and disbursements of this action, as well as attorneys' fees; and

E. That the Court award Streaming Edge such other and further relief as the Court deems just, proper, and equitable.

Dated:   Calverton, New York
         April 7, 2022

/s/ Todd Wengrovsky
Todd Wengrovsky
Law Offices of
Todd Wengrovsky, PLLC.
285 Southfield Road, Box 585
Calverton, NY 11933
Tel (631) 727-3400
Fax (631) 727-3401
contact@twlegal.com
